IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ELIZABETH KISS,

                        Plaintiff,

      vs.

ANDREW SAUL,[1]
Commissioner of Social Security,

                        Defendant.

Case No. 3:19-cv-00061-JWS

**ORDER RE DOCKET NO. 12**

## I.   INTRODUCTION

On December 28, 2015, Claimant Elizabeth Kiss ("Claimant") filed an application for Disability Insurance Benefits ("disability benefits") under Title II of the Social Security Act ("the Act") and filed a Title XVI application for Supplemental Security Income ("SSI") alleging disability beginning August 24, 2015.[2] Claimant exhausted her administrative remedies and seeks relief from this court.[3] She argues the determination by the Social

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] Claimant had originally claimed a disability onset date of April 1, 2015, but later amended her onset date to August 24, 2015.

[3] Docket No. 12.

Security Administration ("SSA") that she is not disabled, within the meaning of the Act, is not supported by substantial evidence and that the Administrative Law Judge ("ALJ") committed legal errors. Claimant seeks a reversal of the decision by the SSA and a remand for calculation of benefits or, alternatively, further proceedings.

The Commissioner of the SSA ("Commissioner") filed an answer to the complaint at docket 10 and an answering brief at docket 13. Claimant filed a reply brief at docket 14. Oral argument was not requested and was not necessary to the court's decision.

## II. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[4] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[6] In reviewing the agency's determination, a court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[7] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[8] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a

---

[4] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).
[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[6] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).
[7] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).
[8] *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984).

ground upon which he did not rely."[9] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination . . . or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[10] Finally, the ALJ has a "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"[11] This duty exists for both a represented claimant and an unrepresented claimant, although the ALJ must be especially diligent in developing all the facts when the claimant is unrepresented.[12]

## III.  DETERMINING DISABILITY

The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[13] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[14]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

---

[9] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[10] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[11] *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930-31 (9th Cir. 2014).

[12] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

[13] 42 U.S.C. § 423(a).

[14] 42 U.S.C. § 423(d)(1)(A).

any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[15]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[16] A claimant bears the burden of proof at steps one through four in order to make a *prima facie* showing of disability.[17] If a claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at step five.[18] The Commissioner can meet this burden in two ways: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2."[19]

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education,

---

[15] 42 U.S.C. § 423(d)(2)(A).

[16] 20 C.F.R. § 404.1520(a)(4).

[17] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[18] *Treichler*, 775 F.3d at 1096 n.1.

[19] *Tackett*, 180 F.3d. at 1099.

or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.

**Step 3.** Determine whether the impairment or combination of impairments meets or equals the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, so as to preclude substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[20]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step.

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.

---

[20] 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996).

## IV. PROCEDURAL AND FACTUAL BACKGROUND

Claimant was born July 10, 1969; she is currently 50 years old. She alleges that she is disabled due to Chronic Regional Pain Syndrome ("CRPS"). She reported working as an administrative assistant prior to her alleged disability onset date, which was August 24, 2015. On October 17, 2016 the SSA determined that Claimant was not disabled under the applicable rules.[21] On November 1, 2016, Claimant timely requested a hearing before an ALJ.[22] On February 23, 2018, she appeared and testified with legal representation at a hearing before ALJ Paul Hebda.[23] On April 2, 2018, the ALJ issued an unfavorable ruling from August 24, 2015, through the date of the decision.[24] On February 2, 2019, the Appeals Council denied Claimant's request for review. In doing so, it rejected one piece of additional evidence Claimant submitted and concluded that the remaining additional evidence Claimant submitted "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision."[25]

### A. ALJ Decision

Applying the familiar 5-step process, the ALJ concluded as follows:

**Step 1**: Claimant had not engaged in substantial gainful activity since August 24, 2015, her alleged onset date.

---

[21] A.R. 202-207.
[22] A.R. 209.
[23] A.R. 125
[24] A.R. 109-120.
[25] A.R. 2.

**Step 2**: Claimant suffered from a severe impairment, CRPS. Her hypertension, lumbar degenerative disc disease, carpal tunnel, and depression and anxiety were non-severe.

**Step 3**: Claimant's severe impairments did not meet any medical listings.

**RFC**: In evaluating her RFC, the ALJ concluded that Claimant has the "capacity to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) except no climbing of ladders, ropes, or scaffolds; no exposure to unprotected heights or hazardous machinery; [with a] sit/stand option allowing her to alternate sitting or standing positions throughout the day without going off task."[26] In doing so he found that Claimant had a medically determinable impairment that could be reasonably expected to produce claimant's pain, but that her testimony about the intensity, persistence, and limiting effects of her pain were not credible given the medical records presented and inconsistent statements about her pain and abilities found in those records.[27] He also assigned "great weight" to the agency physician, Dr. Robert Sklaroff, who had not treated or examined Claimant.[28] He assigned "little weight" to Dr. Gevaert's opinions about Claimant's limitations given the medical record and because his opinions about Claimant's limitations were set forth in a "check the box" form with no additional details provided.[29] He also assigned "little weight" to Dr. Liu for failing to provide any reference to the medical record

---

[26] A.R. 115.
[27] A.R. 116-117.
[28] A.R. 117-118.
[29] A.R. 118-119.

to support his belief that Claimant's medical condition prohibits her from being gainfully employed.[30]

**Step 4**: The ALJ found that given the Claimant's RFC, she was capable of performing past relevant work, which includes work as an Accounting clerk, Dictionary of Occupational Titles ("DOT") 216.482-010; Order clerk, DOT 249.362-026; and Payroll clerk, DOT 215.382-014.[31]

**Step 5:**  Because the ALJ determined that Claimant was capable of performing past relevant work, he did not proceed to Step 5.

### B.  Medical Records and Testimony

*Records:*  Claimant's relevant medical records from treating physicians include the following:

(1)   **Anchorage Neighborhood Health Center records:** Claimant went to the Anchorage Neighborhood Health Center in October of 2015. She complained that her right foot began hurting in August of 2015 after attending a wedding. She was referred to Orthopedic Physicians Alaska for her foot.

(2)   **Orthopedic Physicians Alaska records**: In late October and Mid-November Claimant saw two different providers regarding her right foot. She reported to both providers that her foot pain started after wearing high heels at a wedding and then walking through the Mall of America a couple of days later.  The notes indicate "diffuse swelling about the dorsal aspect of

---

[30] A.R. 119.
[31] A.R. 119.

her foot and right great toe."[32] She was referred to the Alaska Spine Institute for an "electrodiagnostic consultation."[33]

**(3)**     **Alaska Spine Institute, Dr. Michel Gevaert records**: On November 17, 2015, Claimant was seen by Dr. Gevaert. After conducting various tests, he concluded that she "appears to have a clinical presentation of mild Complex Regional Pain Syndrome Type I with hyperalgia in the distal distribution of the superficial and deep peroneal nerve associated with mild skin discoloration and some edema."[34] She was seen again on December 15, 2015, and Dr. Gevaert noted that "[s]he remains with swelling, pain and inability to fully weight bear on the right foot."[35] He noted she was in "mild distress." He noted that she had "marked swelling of the foot and lower one-third of the leg with reddish discoloration" and that her foot "feels cold."[36] Her treatment plan consisted of pain medication, contrast baths, and a sympathetic nerve block.[37] Claimant underwent right lumbar sympathetic nerve block procedures on December 17, 2015, January 22, 2016, and January 29, 2016.[38]

**(4)**     **Dr. Gevaert form**: After Claimant's first sympathetic block procedure, Dr. Gevaert filled out a "Functional Capacity Letter." The form is dated 12-23-

---

[32] A.R. 437.
[33] A.R. 456.
[34] A.R. 457.
[35] A.R. 448.
[36] A.R. 449.
[37] A.R. 449.
[38] A.R. 542, 539, 537.

12, but the date is an obvious error as the fax stamp on the top is dated 12-23-15, which correlates to Claimant's treatment date. Dr. Gevaert filled out the circle next to "Unable to work" and, by filling in other circles on the form, indicated that she would have difficulty stooping, bending, and balancing, that she would need unscheduled breaks, and that she would require an assistive walking device.[39]

(5) **Dr. Gevaert follow-up appointments**: Claimant met with Dr. Gevaert and a nurse practitioner from his office regularly during the period she was receiving sympathetic blocks. Dr. Gevaert's notes from January 18, 2016, state that the block worked for a period of time but then stopped being effective. His examination noted "mild skin discoloration in the right foot" and that the right foot was "slightly colder."[40] He thought there was some clinical improvement and recommended physical therapy and continued treatment with sympathetic blocks.[41] The nurse practitioner's notes from February 25, 2016, April 6, 2016, and April 27, 2016, indicate that Claimant reported no improvement after her third block procedure and that she continued to report pain in the right foot and ankle.[42] The notes state that she was unable to bear weight on her right side and ambulated with a limp.[43]

---

[39] A.R. 564.
[40] A.R. 529.
[41] A.R. 529.
[42] A.R. 528, 525.
[43] A.R. 525, 524.

**(6)** **University Imaging Center records**: Claimant underwent imaging of her right foot and ankle in June of 2016. The radiologist confirmed Chronic Regional Pain Syndrome associated with her right foot: "Severe osteopenia, [which is] a typical appearance seen in patients with stage II CRPS."[44] The radiologist found something similar in her right ankle: "Osteopenia, [which is] certainly consistent with stage II CRPS."[45]

**(7)** **Emergency Room visit**: Claimant went to the ER on November 28, 2016, for leg pain.[46]

**(8)** **Dr. Gevaert follow-up appointments**: Claimant met with Dr. Gevaert on November 30, 2016. He noted she reported "stabbing pains" in both legs and that the blocks have not been effective. He discussed the option of a spinal cord stimulator to treat her pain.[47]

**(9)** **Dr. Gevaert letters**: Dr. Gevaert wrote a letter on March 22, 2016, explaining that CRPS is a "very painful condition" that affects "her ability to stand and walk."[48] He stated that she would not be able to work for three months. On May 23, 2016, three months later, he wrote another letter stating that her condition had not improved and that her condition will be chronic. He opined that she would not be able to be employed for at least six months.[49]

---

[44] A.R. 552.
[45] A.R. 553.
[46] A.R. 638-655.
[47] A.R. 615.
[48] A.R. 527.
[49] A.R. 523.

Finally, on December 8, 2016, he wrote that he believed her condition was permanent that her CRPS "prevents her from being gainfully employed."[50]

**(10)** **Neuroversion, Inc., Dr. Liu records**: In the fall of 2017, Claimant began seeing Dr. Liu for her pain management. His notes from September 11, 2017, indicate that she had an "antalgic" gate and used a cane.[51] He diagnosed her with having CRPS of both lower extremities and of the right upper extremity and recommended a series of sympathetic nerve blocks and stellate ganglion nerve blocks and possibly the use of a spinal cord stimulator as a way to reverse the disease progression.[52] She underwent a series of blocks in September of 2017, but based on Dr. Liu's follow up notes, she reported that the blocks helped alleviate symptoms for only a few days. The treatment notes included sections describing the effects of treatment on her pain level and activities and his entries in these sections indicate moderate pain control and improvement with current management, but the next section of his notes state that Claimant reported "nearly constant" pain and listed lifting, walking, standing, straining, sitting, climbing stairs, and bending as activities that worsen pain.[53] Dr. Liu recommended a "more aggressive approach" consisting of "weekly right and left lumbar sympathetic nerve blocks."[54] Those procedures were performed throughout October of 2017. Again, Dr.

---

[50] A.R. 614.
[51] A.R. 709.
[52] A.R. 710-712.
[53] A.R. 689-690
[54] A.R. 693.

Liu's follow-up treatment notes state in one section that claimant experienced adequate pain control with current management and improved ability to perform daily activities, but state in the next section that she reports constant pain made worse by lifting, walking, standing, straining, sitting climbing stairs, and bending.[55]

**(11)** **Dr. Liu letter**: On December 5, 2017, Dr. Liu wrote a letter where he stated that he believed Claimant was unable to work due to her condition.

*Additional Records:* Claimant submitted additional treating source documents for the Appeals Council to consider:

**(1)** **Dr. Liu records**: Claimant continued to see Dr. Liu throughout the winter and spring of 2018. She submitted his treatment records from her visits to the Appeals Council, as well as a letter dated May 16, 2018, wherein Dr. Liu reiterates his opinion that she is unable to work based on his treatment of her over the previous eight months.

**(2)** **Dr. Gevaert's medical source statement**: In February of 2017, Dr. Gevaert filled out a medical source statement for the SSA. He indicated that he believed her condition was permanent and that she could not walk far and needed to use a cane. He reported that she was not a malingerer. He stated that Claimant's pain would constantly interfere with her ability to

---

[55] A.R. 663-664, 658-659.

concentrate and that she would miss more than four days a month due to her condition. He indicated that he believed her depression and anxiety contributed to her physical condition.[56]

*Medical Testimony:*  Dr. Sklaroff testified at Claimant's hearing on February 23, 2018, as a medical expert.  He testified that there is no medical evidence to substantiate Claimant's reports about the intensity and severity of her pain. He testified that with adequate pain relief Claimant "should be able to stand, sit or walk, any one of them up to six hours during a normal eight-hour day with normal breaks."[57]  He thought she should be able to "push, pull, squat, bend or reach . . . [and] lift 50 pounds [on] occasion, [and] 25 pounds frequently."[58]  He thought her "foot issue" was "probably transient" and did not support the use of a cane.[59]  Because of "psych issues" he believed she should not do work involving "heights, ropes, scaffolds, ladders or hazardous machinery."[60]

## C. Issues on Appeal

Claimant argues that the ALJ's decision is not supported by substantial evidence and that the ALJ committed legal errors in denying her benefits. Specifically she contends that the ALJ improperly discounted the opinion of her treating physician, Dr. Michel Gevaert, while assigning "great weight" to the opinion of Dr. Robert Sklaroff, a non-

---

[56] A.R. 104-105.
[57] A.R. 143.
[58] A.R. 143.
[59] A.R. 144.
[60] A.R. 144.

treating, non-examining agency physician witness.[61] She also contends that the Appeals Council improperly rejected the additional evidence she submitted and failed to properly assess and weigh the significance of that additional evidence.[62] The Commissioner responds that the ALJ reasonably assigned more weight to Dr. Sklaroff's opinion than to Dr. Gevaert's opinion because it better aligned with the overall record. As for the additional evidence at the appeal level, the Commissioner responds that the court cannot review the Appeal Council's decision to decline review of the ALJ's decision and, alternatively, the additional evidence does not detract from the substantial evidence supporting the ALJ's decision.[63]

## IV. DISCUSSION

### A. Weighing of Medical Opinions

#### 1. Legal Standards

"Regardless of its source, [the SSA] will evaluate every medical opinion [it] receive[s]."[64] Medical opinions come from three types of sources: those who treat the claimant ("treating sources"); those who examine, but do not treat the claimant ("examining sources"); and those who neither examine nor treat the claimant ("non-examining sources").[65] "'As a general rule, more weight should be given to the opinion of a treating source than to the opinion of [sources] who do not treat the claimant.'"[66] And the

---

[61] Docket 12 at p. 2.
[62] *Id.*
[63] Docket 13 at pp. 2-3.
[64] 20 C.F.R. § 416.927(c) (evaluating opinion evidence for claims filed before March 27, 2017).
[65] *Garrison*, 759 F.3d at 1012.
[66] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

opinion of an examining—but non-treating—source generally should be given more weight than that of a non-examining source.[67] As such, a treating source's opinion typically should be given the most weight. Indeed, as long as the opinion is supported by the medical evidence and is not inconsistent with other substantial evidence in the administrative record, it should be assigned controlling weight.[68] If a treating source's opinion is not given controlling weight it is nonetheless due deference depending on the length of the treatment relationship and the frequency of examination, as well as the nature and extent of the treatment relationship.[69]

When weighing a medical opinion, the ALJ also must consider the extent to which the opinion is supported by relevant evidence (*e.g.,* medical signs and laboratory results); the extent to which an opinion is consistent with other opinions and evidence in the record; whether the opinion is within the source's area of specialization; and "other factors" such as the familiarity of the SSA disability benefits process and other information in the case record.[70]

An ALJ may outright reject the uncontroverted opinion of treating physician for "clear and convincing" reasons supported by substantial evidence.[71] In the event that medical sources disagree in their opinions, the ALJ is charged with the responsibility of determining credibility and resolving conflicts in medical testimony and ambiguities.[72] If

---

[67] *Id.*
[68] 20 C.F.R. § 416.927(c)(2).
[69] 20 C.F.R. § 416.927(c)(2); *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007).
[70] *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(c)).
[71] *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).
[72] *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

the treating source's opinion is contradicted by a non-treating medical source, an ALJ may not reject a treating source's opinion without setting forth "specific and legitimate reasons" that are based on substantial evidence in the record.[73] When rejecting a medical source's opinion, the ALJ cannot offer mere conclusions; instead, the ALJ must set forth his own interpretations of the conflicting clinical evidence and findings therefrom and explain why his findings, rather than the doctor's, are correct.[74] The conclusions of an examining source who relies on the same clinical findings as a treating source, but differs only in his or her conclusions, are not considered substantial evidence.[75] If based on independent clinical findings, however, the opinion of a non-treating or non-examining physician may serve as substantial evidence.[76] "An ALJ may discredit a treating source's opinion that is conclusory, brief, *and unsupported by the record as a whole or by objective medical findings*."[77]

## 2. Analysis

Dr. Gevaert was one of Claimant's primary treating physicians during the relevant timeframe. As such, his opinion is entitled to greater weight than that of a non-treating physician with a contrary opinion unless the ALJ identifies "specific, legitimate reasons … based on substantial evidence in the record."[78] The Court concludes that the ALJ failed to provide sufficient convincing reasons supported by substantial evidence for assigning Dr.

---

[73] *Orn*, 495 F.3d at 632 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).
[74] *Id.* (quoting *Reddick v. Chater*, 157 F.3d at 725); *Thomas*, 278 F.3d at 957.
[75] *Orn*, 495 F.3d at 632.
[76] *Id*.
[77] *Burrell v. Colvin*, 775 F.3d 1133,1140 (9th Cir. 2014) (quoting *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004)).
[78] *Orn*, 495 F.3d at 632 (internal quotation marks omitted).

Gevaert's opinions little weight. The ALJ concluded that Dr. Gevaert's opinion that Claimant is unable to walk or stand for more than 50 minutes at a time is "inconsistent with the record because medical records do no show impairments requiring accommodations for stooping and bending, balance issues, or the need of an assistive walking device . . . [and] [i]maging test showed the claimant to have mild degeneration but no impairments debilitating enough to support such limitations."[79] The only citation to the record in support of this conclusion is to Dr. Liu's treatment notes from October 23, 2017, which sets forth a summary of Claimant's condition and test results.[80] The ALJ also relied on the testimony of Dr. Sklaroff to support his conclusion that there was no "objective medical support in the record for the need of an assistive device."[81]

Looking at the factors that the ALJ is required to consider when evaluating medical opinions, the Court finds that the ALJ erred in his assessment of Dr. Gevaert's opinion as to Claimant's physical limitations. He did not take into consideration the frequency and extent of Dr. Gevaert's relationship with Claimant. His conclusion ignores the various treatment records from Dr. Gevaert, which diagnosed her with CRPS based on his clinical findings (swelling, discoloration, cold), prescribed treatments, and documented the ineffectiveness of such treatments. His diagnosis is supported by the imaging taken in June of 2016 wherein the radiologist indicated that images of Claimant's right foot showed "severe osteopenia" consistent with stage II CPRS and that images of her right ankle also

---

[79] A.R. 118.
[80] A.R. 118 (citing Ex. 16F at p. 12).
[81] A.R. 118.

showed "osteopenia" consistent with stage II CPRS.[82] The ALJ did not consider Dr. Gevaert's specialty in pain management with the Alaska Spine Institute when rejecting his opinion that claimant suffered from a "very painful condition" that affects her ability to walk or stand.[83] Dr. Gevaert's treatment notes did not specify that he had concerns of malingering by Claimant at any point in time. Therefore, it was appropriate and reasonable for him to take Claimant's self-reports of pain into consideration.[84]

The ALJ also discounted Dr. Gevaert's opinion that Claimant has limited functional capacity because it was presented in a "check-the box" form without any details or support.[85] While the ALJ did not provide a citation to the record, the "check-the-box" form referred to must be the form mistakenly dated December 23, 2012, rather than December 23, 2015. The error in the date is clear from the timeframe of Dr. Gevaert's treatment and the fax stamp on the top of the form.[86] The ALJ's rejection of this form in isolation is not an error, given that at the time Dr. Gevaert filled out the form, he had not treated Claimant much more than a month. However, the form does not exist in isolation. Dr. Gevaert continued to treat Claimant and continued to hold the same opinion as to Claimant's disability and limitations after continued treatment. His letters dated March 22, 2016,[87]

---

[82] A.R. 552, 553.

[83] A.R. 523.

[84] *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008).

[85] A.R. 119. Claimant argues that the ALJ was referring to Dr. Gevaert's Medical Source Statement dated February 23, 2017, which is included in the administrative record only as part of the Appeals Council material. She makes an argument that the statement must have been available to and considered by the ALJ, but kept out of the hearing record and not shown to Dr. Sklaroff. The court finds this argument unpersuasive. There is no reason to suspect malfeasance with the record given that there is another "check-the-box" form in the record at A.R. 564.

[86] A.R. 564.

[87] A.R. 527.

May 23, 2016,[88] and December 8, 2016[89] confirm his opinion and are supported by the accompanying treatment records.[90] Indeed, the Medical Source Statement from Dr. Gevaert dated February 23, 2017, that Claimant provided to the Appeals Council provides another iteration of Dr. Gevaert's opinion about Claimant's workplace limitations and is supported by his many months of treatment and the accompanying records.[91] While this form was not a part of the record at the time of the ALJ's decision, it becomes part of the record for purposes of this court's review if it was considered by the Appeals Council when making its review determination.[92] The claimant's submission of this document to the Appeals Council was proper,[93] and the Appeals Court considered Dr. Gevaert's statement in its decision to deny review, finding that while it related to the period before the ALJ's decision, it would not change the ALJ's conclusion.[94] Therefore, it is part of the current record and supports this court's decision that the ALJ's rejection of Dr. Gevaert's opinion, Claimant's treating physician, was not based on substantial evidence.

The Court concludes that the ALJ also erred by assigning Dr. Sklaroff's opinion substantial weight in forming his conclusion that Claimant is capable of medium exertional

---

[88] A.R. 523
[89] A.R. 614.
[90] An ALJ may discredit a treating source's opinion that is conclusory, brief, and not otherwise supported by the record. *Burrell*, 775 F.3d at 1140.
[91] A.R. 104-105.
[92] *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ( "[W]e hold hat when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); *Ramierz v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (noting that additional medical evidence submitted to and considered by the Appeals Council becomes part of the record).
[93] Claimant did not need to show "good cause" to do so, as long as the evidence relates to the period on or before the ALJ's decision. *Brewes*, 682 F.3d at 1162.
[94] A.R. 2.

work with some limitations. Dr. Sklaroff testified that, based on his review of the record, he did not believe there was medical documentation to support the claims of debilitating pain. He stated that Claimant's basis for chronic pain was primarily in the hands and upper extremities, but that the imaging studies in Exhibit 19F do not show a problem with her spine that would cause any major pain in her upper extremities.[95] He stated that Claimant's complaint of pain "boils down to the neck issue and nothing else below" and therefore he questioned "why [claimant was] using a cane."[96] Dr. Sklaroff's testimony, however, is flatly incorrect. The medical exhibits make clear that Claimant's pain began in her right lower extremity. When Claimant pointed out during the hearing that it was her right lower extremity that did not function properly due to her CRPS, Dr. Sklaroff testified that he did not find support for such a diagnosis in the records.[97] He cited an emergency room visit on November 28, 2016, and stated that he did not see the diagnosis in those notes[98] and stated that there were no imaging studies in the record supporting the need for a cane.[99] He ultimately concluded that the "problem with her leg . . . is not supported on physical examination" and then turned back to discussing the records as to Claimant's upper extremities and noting there is no "objective data explaining neurologically why you would have the pain in your arms and/or hand."[100] Again, the diagnosis of CRPS in the right lower

---

[95] A.R. 136-137 (Ex. 19F is at A.R. 780).
[96] A.R. 137-138.
[97] A.R. 139
[98] A.R. 139 (Ex. 15F is at A.R. 638-655). In fact, the emergency room notes do indicate that Claimant suffers from CRPS and that she had arrived at the emergency room for leg pain associated with that condition. A.R. 644.
[99] A.R. 140.
[100] A.R. 140-141.

extremity is set forth in the many medical records from Dr. Gevaert's office, and imaging from June of 2016 supports such a diagnosis. Indeed, the ALJ himself found that Claimant did in fact have CRPS in her right foot as a severe limitation, in contravention of Dr. Sklaroff's opinion, but then, oddly, nonetheless assigned Dr. Sklaroff's opinion significant weight when setting Claimant's RFC. Given Dr. Sklaroff's complete disregard for entire portions of claimant's medical record regarding her underlying diagnosis, his opinion cannot be deemed reliable as to the extent of Claimant's workplace limitations.[101]

The ALJ relied on Dr. Sklaroff's testimony not only to set Claimant's RFC, but also to reject the opinion of Dr. Gevaert and another non-treating physician, Dr. Jeffrey Merrill, the state's medical consultant, who found Claimant able to work but concluded that she was more limited in her workplace abilities than the ALJ.[102] In rejecting these other medical opinions, the ALJ represented that "Dr. Sklaroff outlined that the claimant's impairments are not supported by enough objective evidence to support a limitation on the claimant's right lower extremity or support the need for her use of a cane."[103] This is not an accurate assessment of Dr. Sklaroff's testimony. He did not outline the medical evidence and thereafter conclude that there was no basis for finding a limitation on Claimant's use of her right lower extremity. Rather, he incorrectly believed there was not a diagnosis to support any claim of leg pain in the first place, relying primarily on Claimant's counsel's similar lack of knowledge about the record. As noted above, Dr. Sklaroff's belief is unequivocally

---

[101]*See Garrison*, 759 F.3d at 1012 (noting that how much weight to give a non-examining physician's testimony depends on the degree to which he provides supporting explanations for his opinions).
[102] A.R. 173-176.
[103] A.R. 118.

incorrect and ignores large portions of her medical record. Thus, his opinion that Claimant was not limited in the use of her right leg and did not need a cane cannot constitute substantial contradictory evidence to reject the opinion of her treating physician.[104]

## B. Appeals Council Records

In light of the court's analysis as to the ALJ's improper weighing of medical opinions, it declines to address whether remand is appropriate solely on the issue of the Appeals Council's handling of her additional materials. Suffice it to say, as discussed above, the materials considered but ultimately deemed non-dispositive are part of this court's record on review. The court also notes, for guidance purposes, that the letter from Dr. Liu dated May 16, 2018, which the Appeals Council rejected as untimely, should have been considered with the other additional evidence submitted. The letter, while dated after the ALJ's April 2, 2018 decision contains information about the period before that date. The Appeals Council was therefore required to consider it.[105] However, Claimant did not challenge the ALJ's handling of Dr. Liu's opinions, and consequently whether the letter by Dr. Liu is ultimately material to the decision is not an issue before the court.

## C. Scope of Remand

Claimant requests that the court take Dr. Gevaert's opinion as true, find that she is disabled, and remand the case for an award of benefits. Remanding the case for an award of benefits, however, is only appropriate in "rare circumstances."[106] The court follows a

---

[104] *Thomas*, 278 F.3d at 957 (noting that a non-examining physician's opinion only counts as substantial evidence to reject a treating physician's opinion if it is consistent with independent clinical findings or evidence in the record).
[105] *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232-33 (9th Cir. 2011).
[106] *Treichler*, 775 F.3d at 1101.

three-step analysis to determine whether the case presents "rare circumstances" that allow a court to exercise its discretion to remand for an award of benefits. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"[107] "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'"[108] "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."[109] Third, if the court is convinced no ambiguities or outstanding issues remain, it must be able to conclude that the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true.[110] Even if all three requirements are met, the court retains "flexibility" in determining the appropriate remedy and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[111]

Based on this Court's review of the record as a whole, this is not one of the "rare circumstances" that warrant a remand for an award of benefits. While the court concludes that the ALJ did not provide legally sufficient reasons for rejecting the opinions of Dr. Gevaert and assigning substantial weight to the testimony of Dr. Sklaroff, the record has not been adequately developed on the issue of Claimant's limitations and further

---

[107] *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison*, 759 F.3d at 1020).
[108] *Id.* (quoting *Garrison*, 759 F.3d at 1020).
[109] *Treichler*, 775 F.3d at 1101.
[110] *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021).
[111] *Id.*

proceedings would in fact be useful here. The documents submitted to the Appeals Council, including Dr. Gevaert's Medical Source Statement dated February 23, 2017, which more fully sets out his opinion about Claim's functional capacity, and Dr. Liu's letter dated May 18, 2016, have not yet been considered by the ALJ. Furthermore, the record contains some inconsistencies regarding Claimant's use of medication, ability to ambulate without a cane, and pain levels and ability to conduct daily activities while on her prescribed course of medication. For example, records from her December 2015 visits with Dr. Gevaert indicate that she was unable to fully bear her weight on her right foot, but physical therapy records from a few weeks later indicate that she was capable of "independent ambulation on level surfaces."[112] Notes from a primary care appointment in January 2016 indicate that Claimant reported she was "nearly pain free."[113] On August 18, 2016, she reported increasing pain even while on her medications, but a month later she reported that she could perform all activities without assistance.[114] The various treatment notes from Dr. Liu's office during the fall of 2017 contain internal inconsistencies about her pain and abilities: the treatment notes state that she reports some pain control with her current management and "significant improvement to activities of daily living and functional activities with current management," but those same notes state that she reports nearly constant, high-levels of pain and the inability to lift, walk, standing, sit, climb, or bend.[115] These inconsistencies do not in and of themselves support a denial of benefits, particularly given

---

[112] A.R. 451.
[113] A.R. 411
[114] *Compare* A.R. 511 *with* A.R. 759.
[115] *See, e.g.,* A.R. 668-669, 663-664, 658-659.

the SSA's ruling regarding CRPS which acknowledges that "signs [of CRPS] are not present continuously, or the signs may be present at one examination and not appear at another,"[116] but they do support remand for further investigation as to Claimant's workplace capacity and limitations. Indeed, the ALJ has a duty to more fully evaluate these ambiguities and conflicts apart from simply relying on the testimony of Dr. Sklaroff.[117]

## V.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion for an award of disability at **Docket 12** is **GRANTED IN PART,** and this matter is **REMANDED** for further administrative proceedings in accordance with this opinion.

DATED  this  18th day of September 2019 at Anchorage, Alaska.


___*/s/ John W. Sedwick*___
JOHN W. SEDWICK
Senior United States District Judge

---

[116] SSR 03-2P, 2003 WL 22399117; *see also Lester v. Chater*, 81 F.3d 821, (9th Cir. 1995) ("Occasional symptom-free periods—an even the sporadic ability to work—are not inconsistent with disability").
[117] *Treichler*, 775 F.3d at 1098 (noting that the ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it).